IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

ST. PAUL MERCURY INSURANCE
COMPANY,

        Plaintiff,

vs.

U.S. CENTURY BANK, a Florida Corporation, RAMON RASCO, FRANCISCO ANGONES, JOSE CANCELA, SERGIO PINO, CARLOS M. GARCIA, ARMANDO J. GUERRA, AGUSTIN HERRAN, MANUEL HERRAN, ADOLFO HENRIQUES, RODNEY BARRETO, CARLOS DÁVILA, ABEL MONTOURI, JORGE CARVALLO, SAMUEL MILNE, CARLOS E. SILVA, JORGE E. SILVA, JUAN J. HERRAN, MD, CARMEN DE LOURDES HERRAN, JESUS R. TOME, ISABEL B. TOME, ANIBAL DUARTE-VIERA, and MASOUD SHOJAEE.

        Defendants.
_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, St. Paul Mercury Insurance Company ("Travelers"), brings this action for declaratory relief against Defendants, U.S. Century Bank, Ramon Rasco, Francisco Angones, Jose Cancela, Sergio Pino, Carlos M. Garcia, Armando J. Guerra, Agustin Herran, Manuel Herran, Adolfo Henriques, Rodney Barreto, Carlos Dávila, Abel Montouri, Jorge Carvallo, Carmen De Lourdes Herran, Samuel Milne, Carlos E. Silva, Jorge E. Silva, Juan J. Herran, Jesus R. Tome, Isabel B. Tome, Anibal Duarte-Viera, and Masoud Shojaee (collectively, "Defendants"), and alleges as follows:

## Nature of the Case

1. This is an action for declaratory relief brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2. Travelers seeks a declaration that its Select One for Community Banks Policy No. EC00900250 (the "Policy") does not provide coverage for any settlement, defense costs, expenses, or any other purported Loss (as that term is defined in the Policy) incurred by or on behalf of the defendants in or connected to the lawsuit styled <u>Carlos Silva v. U.S. Century Bank, et al.</u>, Case No. 12-44522 CA 40, Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Silva Lawsuit"). A true and correct copy of the Policy is attached hereto as Exhibit "A". A true and correct copy of the most recent Complaint in the Silva Lawsuit, the Fourth Amended Complaint, is attached hereto as Exhibit "B".

## Jurisdiction and Venue

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the action involves a dispute between citizens of different states, and the amount in controversy exceeds $75,000.00.

4. This Court has personal jurisdiction over Defendants because the individual Defendants are residents of Florida, and Defendant U.S. Century Bank is a Florida state chartered commercial banking institution organized and existing under the laws of Florida, with its principal place of business in Florida.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in Miami-Dade County, Florida.

**Parties**

6. Plaintiff Travelers is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business located in Hartford, Connecticut. At all relevant times, Travelers was licensed to conduct and transact insurance business in the State of Florida.

7. Defendant, U.S. Century Bank (the "Bank") is a Florida state chartered commercial banking institution organized and existing under the laws of Florida, with its principal place of business in Florida.

8. Defendant, Carlos E. Silva, is an individual residing in Florida and is a citizen of Florida.

9. Defendant, Jorge E. Silva, is an individual residing in Florida and is a citizen of Florida.

10. Defendant, Juan J. Herran, MD, is an individual residing in Florida and is a citizen of Florida.

11. Defendant, Carmen De Lourdes Herran, is an individual residing in Florida and is a citizen of Florida.

12. Defendant, Jesus R. Tome, is an individual residing in Florida and is a citizen of Florida.

13. Defendant, Isabel B. Tome, is an individual residing in Florida and is a citizen of Florida.

14. Defendant, Anibal Duarte-Viera, is an individual residing in Florida and is a citizen of Florida.

15. Defendant, Masoud Shojaee, is an individual residing in Florida and is a citizen of Florida.

16. Defendant, Ramon Rasco, is an individual residing in Florida and is a citizen of Florida.

17. Defendant, Francisco Angones, is an individual residing in Florida and is a citizen of Florida.

18. Defendant, Jose Cancela, is an individual residing in Florida and is a citizen of Florida.

19. Defendant, Sergio Pino, is an individual residing in Florida and is a citizen of Florida.

20. Defendant, Carlos M. Garcia, is an individual residing in Florida and is a citizen of Florida.

21. Defendant, Armando J. Guerra, is an individual residing in Florida and is a citizen of Florida.

22. Defendant, Agustin Herran, is an individual residing in Florida and is a citizen of Florida.

23. Defendant, Manuel Herran, is an individual residing in Florida and is a citizen of Florida.

24. Defendant Adolfo Henriques, is an individual residing in Florida and is a citizen of Florida.

25. Defendant, Rodney Barreto, is an individual residing in Florida and is a citizen of Florida.

26. Defendant, Carlos Dávila, is an individual residing in Florida and is a citizen of Florida.

27. Defendant, Abel Montouri, is an individual residing in Florida and is a citizen of Florida.

28. Defendant, Jorge Carvallo, is an individual residing in Florida and is a citizen of Florida.

29. Defendant, Samuel Milne, is an individual residing in Florida and is a citizen of Florida.

### The Policy

30. Travelers issued the Policy to the Bank for the policy period of September 23, 2008, through September 23, 2011, with an additional extended discovery period from September 23, 2011 through September 23, 2012 (the "Additional Extended Discovery Period"). The Policy affords up to $10 million in primary policy year limits of liability subject to a per Claim retention.

31. The Policy defines, among other things, "Company," "Insured" and "Insured Persons":

**Company** means any entity named in the Declarations and its Subsidiaries.

(Policy, CB007, p. 3).

**Insured** means:

(a) the Insured Persons;

(b) the Company, except the Company shall not be an Insured with Respect to the **Directors and Officers Individual Coverage**; and

(c) only with respect to any Fiduciary Liability Insuring Agreement made part of this Policy, the Plans.

5

(Policy, CB007, p. 4).

**Insured Persons means:**

(a) Directors or Officers;

(b) only with respect to any Bankers Professional Liability Insuring Agreement and Trust Liability Insuring Agreement made part of this Policy, Employees; and

(c) only to the extent that coverage is granted as set forth in the Declarations, Employees, Leased Employees and Independent Contractors.

(Policy, CB007, p. 4).

\* \* \*

32. Defendant the Bank is an Insured under the terms of the Policy. Defendants Ramon Rasco, Francisco Angones, Jose Cancela, Sergio Pino, Carlos M. Garcia, Armando J. Guerra, Agustin Herran, Manuel Herran, Adolfo Henriques, Rodney Barreto, Carlos Dávila, Abel Montouri, Jorge Carvallo, and Samuel Milne (collectively "Insured Persons") qualify as Insured Persons under the terms of the Policy in their capacity as Directors, Officers or Employees of the Bank.

33. The Policy is a "claims first made" policy which affords coverage for Claims first made during the policy period or the Additional Extended Discovery Period. The Policy provides four types of coverage: management liability, employment practices liability, fiduciary liability and banker's professional liability. Only the management liability coverage section applies to the Silva Lawsuit.

34. The notice provision of the Policy provides:

**Notice**

> The Insureds shall, as a condition precedent to their rights under this Policy, give to the Insurer written notice of any Claim made against the Insureds as soon as practicable, but in no event later than: (a) sixty (60) days after expiration of the Policy Year in which the Claim was first made; or (b) the expiration of the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period.
>
> If during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery Period, the Insureds become aware of circumstances which could give rise to a Claim for a Wrongful Act taking place before or during the Policy Period and give written notice of such circumstances and the other information referenced below to the Insurer during the Policy Period, the Automatic Discovery Period, or, if exercised, the Additional Extended Discovery Period, then any Claims subsequently arising from such circumstances shall be considered to have been made during the Policy Year, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery period in which such notice of such circumstances and such other information was first given to the Insurer.
>
> The Insureds shall, as a condition precedent to exercising their rights under this Policy: (a) include within any notice of Claim or circumstance a description of the Claim or circumstances, the nature of the alleged Wrongful Act, the nature of the alleged or potential damage, the names of actual or potential claimants and Insureds involved, and the manner in which the Insureds first became aware of the Claim or circumstances; and (b) give to the Insurer such other information and cooperation as the Insurer may reasonably request.
>
> All notices under any provision of this Policy shall be in writing and given by prepaid express courier, certified mail or fax properly addressed to the appropriate party.  Notice to the Insureds may be given to the Parent Company at the address set forth in the Declarations.  Notice to the Insurer of any Claim or circumstance shall be given to The St. Paul Travelers Companies, Inc., 385 Washington Street, St. Paul, Minnesota 5510-2-1396, Attention: Professional E&O Claim Unit.  All other notices to the Insurer under this Policy shall be given to the same addressee but to the attention of the Financial and Professional Services Unit.  Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee or one (1) day following the date such notice is sent, whichever is earlier.

* * *

(Policy, CB007, pp. 11-12).

35. The Additional Extended Discovery Period was purchased by the Bank for the period September 23, 2011 to September 23, 2012.  The Policy provides, in part, that "Any Claim made during the Additional Extended Discovery Period shall be deemed to have been made during the Policy Year immediately preceding the Additional Extended Discovery Period." (Policy, CB007, p. 1).

36. The Management Liability Insuring Agreement includes Directors and Officers Individual Coverage ("D&O Coverage"), Company Liability Coverage and Company Indemnification Coverage under the express terms and conditions of the Policy.  The limit of liability under the Management Liability Insuring Agreement is $10,000,000 for Loss on account of all Claims first made during the same Policy Year, including the Automatic Discovery Period and the Additional Extended Discovery Period.  (Policy, CB007, p 10).  The Limits of Liability are inclusive of Defense Costs. (Policy, CB007, p. 10).

37. As to D&O Coverage, the Policy provides in part, that:

**Directors and Officers Individual Coverage**

> The Insurer shall pay on behalf of the Insured Persons Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period, ... or if exercised, the Additional Extended Discovery Period, for a Management Practices Act taking place before or during the Policy Period.

(Policy, CB003, p. 1).

38. Further, the Company Indemnification Coverage provision provides, in relevant part, that:

**Company Indemnification Coverage**

> If **Company Indemnification Coverage** is granted as set forth in the Declarations, the Insurer shall pay on behalf of the Company Loss for which the

> Company grants indemnification to the Insured Persons, as permitted or required by law, and which the Insured Persons have become legally obligated to pay on account of any Claim first made against them, individually or otherwise, during the Policy Period, … or, if exercised, the Additional Extended Discovery Period, for a Management Practice Act taking place before or during the Policy Period.

(Policy, CB003, p. 1).

***

39. Finally, the Company Liability Coverage provides:

> **Company Liability Coverage**
>
> If **Company Liability Coverage** is granted as set forth in the Declarations, the Insurer shall pay on behalf of the Company Loss for which the Company becomes legally obligated to pay on account of any Claim first made against the Company during the Policy Period, … or, if exercised, the Additional Extended Discovery Period, for a Management Practices Act taking place before or during the Policy Period.

(Policy, CB003, p. 1).

40. The Policy defines "Claim," "Loss," "Management Practices Act," and "Wrongful Act" in relevant part:

> **Claim** means the following, including any appeal therefrom:
>
> (a) a written demand against any Insured for monetary damages or non-monetary relief;
>
> (b) a civil proceeding against any Insured commenced by the service of a complaint or similar pleading;
>
> ***
>
> (e) a written request received by any Insured to toll or waive a statute of limitations, relating to a potential Claim described in (a), (b), (c) or (d) above;
>
> On account of a Wrongful Act

***

(Policy, CB007, p. 2-3).

**Loss** means the amount which the Insureds become legally obligated to pay on account of each Claim and for all Claims made against them during the Policy Period, the Automatic Discovery Period or, if exercised, the Additional Extended Discovery period, for Wrongful Acts for which coverage applies, including Damages, judgments, settlements and Defense Costs.  Loss does not include

* * *

(c)     any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower;

* * *

(f)     matters uninsurable under the law pursuant to which this Policy is construed; provided that Damages shall be deemed insurable under the Policy if such Damages are insurable under the law of any jurisdiction that is most favorable to the insurability of such Damages and has a substantial relationship to the Insureds, the Claim, the Insurer, or this Policy.

* * *

(Policy, CB007, p. 5) (see also CB103, p. 1).

**Management Practices Act** means:

(a)     any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any Insured Person in their capacity as such, or in an Outside Position or, with respect to the **Company Liability Coverage**, by the Company; or

(b)     any matter claimed against the Insured Persons solely by reason of their serving in such capacity or in an Outside Position.

Management Practices Act does not include (i) a Fiduciary Act; or (ii) any conduct actually or allegedly committed or attempted by any Insured Person in their capacity as a director, officer, trustee, governor, member of the board of managers, or any equivalent position, or employee of any entity other than the Company, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the Insured Person by the Company, except in their capacity in an Outside Position.

With respect only to any **Company Liability Coverage**, Management Practices Act also does not include an Employment Practices Act, Trust Act, Lending Act or Professional Services Act.

\* \* \*

> **Wrongful Act** means Employment Practices Act, IRA/Keogh Act, Fiduciary Act, Lending Act, Management Practices Act, Professional Services Act, and Trust Act, but only to the extent that coverage is granted for such acts pursuant to an Insuring Agreement made part of this Policy.

(Policy, CB007, p. 5 - 6, 8).

41.     Based on these provisions, the Policy affords D&O, Company Indemnification, or Company Liability coverage only for (1) Claims first made during the policy period or the Additional Extended Discovery Period against an Insured for a Management Practices Act taking place before or during the Policy Period, subject to the other provisions of the Policy, or (2) a Claim that arises from a properly noticed and accepted notice of circumstances which was made during the policy period or Additional Extended Discovery Period, subject to the other provisions of the Policy.

42.     The Management Liability Coverage Section also expressly excludes Loss on account of any Claim made against any Insured:

> 5.     based upon, arising out of, or attributable to any actual or alleged loan, lease or extension of credit:
>
>> (a)     to any Affiliated Person;
>>
>> (b)     to any other person or entity if loans, leases or extensions of credit to such person or entity would be aggregated with a loan, lease or extension of credit to any Affiliated Person for purposes of determining the Company's compliance with any applicable restriction on the concentration of the Company's loans; or
>>
>> (c)     that was, at the time of its making, in excess of the legal lending limit of the Company;

\* \* \*

(Policy, CB003, p. 2-3).

(hereinafter referred to as "Exclusion 5").

43. The term "Affiliated Person" is defined as:

**Affiliated Person** means:

(a) any Director, Officer or Employee;

(b) any shareholder of the Company that directly or indirectly, or acting through or in concert with one or more individuals or entities, owns, controls or has the power to vote ten percent (10%) or more of any class of voting securities of the Company; securities owned or controlled by a member of an individual's immediate family (spouse, minor children and adult children residing with the individual) are considered to be held by the individual for purposes of this definition; or

(c) an entity in which the Company or Directors, Officers or Employees:

   (I) own, either directly or indirectly, twenty-five percent (25%) or more of any class of voting securities of; or

   (ii) have a controlling direct or beneficial interest in;

at the time a loan, lease or extension of credit by the Company to such entity was made or agreed to, or was refused.

∗ ∗ ∗

(Policy, CB007, p. 2).

44. Furthermore, the Policy provides that as to all Insuring Agreements, which would include the Management Liability Insuring Agreement,

The Insurer shall not be liable for Loss on account of any Claim made against any Insured:

1. for any deliberately fraudulent act or omission or any willful violation of any statute or regulation if a final non-appealable judgment or adjudication adverse to such Insured establishes that such Insured committed such an act, omission or violation; provided that this exclusion shall not apply to a Claim for an Employment Practices Act;

(Policy, CB007, p. 8).

(hereinafter referred to as "the Fraud Exclusion").

12

    2.      Based upon, arising out of, or attributable to such Insured gaining in fact any personal profit, remuneration or financial advantage to which such Insured was not legally entitled;

* * *

(Policy, CB007, p. 8).

(hereinafter referred to as the "Personal Profit Exclusion).

    45.      The Policy also provides for allocation of any Loss incurred by the Insureds. Specifically:

> If on account of any Claim the Insureds who are covered for such Claim under this Policy incur Loss jointly with others, including any Insureds who are not covered for such Claim under this Policy, or the Insureds incur an amount consisting of both Loss covered by this Policy and loss not covered by this Policy because the Claim includes both covered Loss and uncovered matters, such amount shall be allocated based upon the relative legal exposures of the parties to covered and uncovered matters.

(Policy, CB007, p. 13-14).

<b><u>The Notice of Circumstances</u></b>

    46.      Prior to the expiration of the Additional Extended Reporting Period of the Policy, the Bank (through counsel) sent a letter dated September 12, 2012 to Travelers relating to a June 14 and July 3, 2012, demand for inspection of books and records by counsel for shareholder Carlos E. Silva.

    47.      Travelers rejected the notice as improper because it did not contain the specifics required by the Policy's notice provision. Some additional information was provided to Travelers by email dated September 21, 2012, and Travelers accepted the notice on a very limited basis by letter dated September 26, 2012. In its September 26th letter, Travelers stated that its acceptance of the notice of circumstances was "limited, however, to any claims by Mr. Silva for insider

13

transactions at the Bank giving rise to Mr. Silva's losses." The Bank never objected to Travelers' acceptance of a limited notice of circumstances.

### Count I: Declaratory Judgment as to the Silva Lawsuit

48. Travelers reasserts the allegations of paragraphs 1 through 47 above as if fully set forth herein.

49. The Silva Lawsuit was filed on November 13, 2012 after expiration of the Policy's policy period and Additional Extended Discovery Period. The Silva Lawsuit is currently being brought by plaintiffs Carlos E. Silva, Jorge E. Silva, Juan J. Herran, MD, Carmen De Lourdes Herran, Jesus R. Tome, Isabel B. Tome, Anibal Duarte-Viera, and Masoud Shojaee (the "Silva Plaintiffs") in a derivative representative capacity in the right of and for the benefit of the Bank, against Defendants, the Bank as a nominal defendant, and against the Insured Persons[1].

50. An amended complaint was filed on November 21, 2012; a second amended complaint was filed on December 19, 2012; a third amended complaint was filed on January 13, 2013; and a fourth amended complaint was filed on July 3, 2013 (the "Fourth Amended Complaint"). Counts I and II of the Fourth Amended Complaint were dismissed with prejudice by order of the court dated October 28, 2013. Counts III through XIX of the Fourth Amended Complaint were not dismissed. A true and correct copy of the Order on Defendants' Motion to Dismiss is attached hereto as Exhibit "C".

51. At the time of filing of this Complaint for Declaratory Judgment, Counts III through XIX of the Fourth Amended Complaint constitute the operative complaint.

52. According to the Fourth Amended Complaint, the Silva Plaintiffs are each minority shareholders of the Bank and assert derivative claims on behalf of and for the benefit of

---

[1] Octavio Hernandez was originally named as a defendant in the Silva Lawsuit, but the claims against him have been dropped and have not been reasserted to date.

the Bank against the Insured Persons. The Bank is a nominal defendant only as to the claims being asserted on its behalf.

53.     The Silva Plaintiffs assert derivative claims on behalf of the Bank to recover sums that were allegedly wasted and lost by the Bank as a result of the wrongful and negligent acts of the Insured Persons.

54.     The Silva Plaintiffs assert the following derivative claims against the Insured Persons on behalf of the Bank: (1) breach of fiduciary duty; (2) negligence; (3) waste and/or misappropriation of corporate assets; and (4) unjust enrichment.

55.     The Silva Lawsuit alleges that the Bank suffered substantial monetary losses due to actions of the Insured Persons which included, among other things (a) participating in improper insider lending; (b) failing to monitor capital requirements; (c) failing to institute proper controls; (d) squandering federal TARP money; (e) leasing Bank branches from directors and officers; and (f) failing to communicate with shareholders.

56.     Coverage does not exist for the Silva Lawsuit under the Policy as the claims currently asserted do not constitute direct claims by Carlos E. Silva for his losses as reported to Travelers in the Bank's September 2012 notice of circumstances.

57.     Coverage does not exist for the Silva Lawsuit based on Exclusion 5 of the Management Liability coverage section of the Policy because the Silva Lawsuit seeks damages arising from improper loans and leases to directors and officers of the Bank, as well as to their family members. As such, all Loss incurred by the Insured Person constitutes Loss on account of loans and leases to Affiliated Persons.

58. Coverage does not exist for the Bank under the Policy as a nominal defendant in the Silva Lawsuit because no Wrongful Acts have been alleged against the Bank, and thus no Claim has been made against the Bank under the Policy.

59. Coverage does not exist under the Policy for the Silva Lawsuit for any amount that does not constitute Loss under the Policy, including "any unrepaid, unrecoverable or outstanding loan, lease or extension of credit to any Affiliated Person or Borrower."

60. Coverage does not exist for the Silva Lawsuit to the extent any other exclusion in the Policy excludes coverage including without limitation the fraud/violation of law exclusion and the personal profit exclusion.

61. Coverage does not exist for defendants Sergio Pino, Carlos M. Garcia, Armando J. Guerra and Agustin Herran to the extent of any liability arising from their actions or status as controlling shareholders because they are not sued in an insured capacity pursuant to the definition of Wrongful Acts in the Policy.

62. To the extent any coverage exists for the Silva Lawsuit, Travelers is entitled to an allocation between any covered Loss and uncovered loss based upon the relative legal exposure of the Insured Persons to covered and uncovered matters.

63. Based on the foregoing facts and Policy provisions, there is a bona fide dispute and an actual, justiciable, genuine controversy between the parties as to whether the aforementioned Policy obligates Travelers to defend or pay any Loss for the Silva Lawsuit.

64. Travelers is in doubt as to the availability of coverage and its duty to provide a defense to the Bank and the Insured Persons under the facts of this case and as to its rights, duties, status and other equitable or legal relations under the Policy. Travelers is entitled to obtain a

declaration of such rights, duties, status and other equitable or legal relations under the Policy, including any allocation of covered Loss and uncovered loss.

      WHEREFORE, Plaintiff Travelers respectfully requests that this Court:

A.     Take jurisdiction over this case, its parties and its subject matter; and

B.     Enter a Declaratory Judgment which:

    1.     Interprets Policy No. EC00900250 issued by Travelers to U.S. Century Bank;

    2.     Applies the Court's interpretations to the facts of this case;

    3.     Determines the respective rights, status, duties and other equitable or legal relations of the parties to this cause;

    4.     Specifically declares that there is no coverage under Policy No. EC00900250 available to the Bank and the Insured Persons for any claims against them or any of them which have been or may be brought by plaintiffs in the Silva Lawsuit, and accordingly, that Travelers has no duty to defend the Bank and the Insured Persons in the Silva Lawsuit to the extent the Silva Lawsuit contains non-covered claims; and

    5.     Specifically declares that Travelers' has no further duty to defend the Bank and the Insured Persons in the Silva Lawsuit as the claims currently asserted were not the subject of the matters noticed by the Bank in its September 2012 notice of circumstances;

    6.     Determines the allocation of covered and uncovered matters, if any; and

7. Grants any further, necessary or proper relief as this Court deems equitable or appropriate under section 28 U.S.C. § 2202, including any recoupment of defense costs already advanced by Travelers.

**TAYLOR, DAY, GRIMM & BOYD**

*s/Reed W. Grimm*
**Reed W. Grimm**
Florida Bar No. 602353
rwg@taylordaylaw.com
**Rhonda B. Boggess**
Florida Bar No. 822639
rbb@taylordaylaw.com
**Gina P. Grimsley**
Florida Bar No. 84561
gpg@taylordaylaw.com
50 North Laura Street, Suite 3500
Jacksonville, FL 32202
Phone: 904/356-0700
Fax: 904/356-3224
Attorneys for Plaintiff, St. Paul Mercury
Insurance Company ("Travelers")